# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JANELL BRAXTON,

            **Plaintiff,**

v.

            **Case No. 20-2287-DDC-GEB**

WALMART INC.,

            **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Janell Braxton asserts a Kansas state law claim of retaliatory discharge against defendant Walmart.[1]  Plaintiff alleges that defendant retaliated against her because defendant terminated plaintiff's employment shortly after she submitted a report for a workplace injury. Doc. 20 at 1 (First Am. Comp. ¶¶ 1–2).  This matter comes before the court on plaintiff Janell Braxton's Motion for Partial Summary Judgment (Doc. 47) and defendant's Motion for Leave to File a Sur-reply (Doc. 64).  Plaintiff filed Suggestions in Support of her Motion for Partial Summary Judgment (Doc. 48).  Defendant responded (Doc. 55) and plaintiff replied (Doc. 59). For reasons explained below, the court denies plaintiff's Motion for Partial Summary Judgment and denies defendant's Motion for Leave to File a Sur-reply.

## I.     Uncontroverted Facts

The following facts are uncontroverted, or, if controverted, are stated in the light most favorable to defendant as the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

---

[1]      Title 28 U.S.C. § 1332 confers subject matter diversity jurisdiction over this action because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000. Doc. 20 at 1–2 (First Am. Comp. ¶¶ 4, 6–9, 13); *see also* Doc. 85 (Pls.' Resp. to Show Cause Order) (alleging amount in controversy exceeds $75,000).

### A. Defendant's Employee Policies

Defendant maintains a written policy, Policy 763e.  In pertinent part, it provides:  "All known injuries, no matter how slight, will be reported to a member of management immediately. At a minimum, these must be reported to a member of management by the end of the shift." Doc. 55-4 at 1.  Defendant also maintains a written Policy 670e, which states, as relevant here, that "[f]ailure to report any known injury before the end of the shift" will result in a First Written formal disciplinary action.  Doc. 55-5 at 1.  Defendant also has adopted written Conduct Disciplinary Action Guidelines, which provide that "Jetflex and Jet Seasonal [associates] should be terminated when their coaching has progressed to a formal written" disciplinary action.  Doc. 55-8 at 1.

### B. Plaintiff's Employment and Injury

Plaintiff was employed by defendant from March 23, 2020 to April 14, 2020.  Doc. 48-1 at 4–5.  During plaintiff's employment with defendant, she was a Jet Seasonal associate.  Doc. 55-7 at 1.  Around 1:00 a.m. on April 13th, 2020 during plaintiff's April 12–13 overnight shift, plaintiff sustained an injury to her left wrist.  Doc. 55-2 at 1.  On April 14, 2020, plaintiff provided to defendant, at defendant's request, a written statement about her work injury.  Doc. 48-2 at 8.  And, as of April 14, 2020, defendant knew plaintiff had reported her injury.  *Id*. Quincy Usry (Operations Manager at defendant's Fulfillment Center in Edgerton, Kansas), David Whitenack (Operations Manager at defendant's Fulfillment Center in Edgerton, Kansas), and Morgan Medaris (Human Resources Business Partner at defendant's facility in Edgerton, Kansas) had reason to believe and understood that plaintiff first reported her April 13th injury to Walmart during her April 14–15, 2020 overnight shift.  Docs. 55-3 at 1–2, 55-2 at 1–2, 55-7 at 1–2.

2

**C.  Plaintiff's Termination**

Based upon Mr. Usry, Mr. Whitenack, and Ms. Medaris's understanding that plaintiff failed to report her injury during the April 12–13, 2020 shift when the injury occurred, Mr. Usry, Mr. Whitenack, and Ms. Medaris concluded that plaintiff violated Policy 670e.  Docs. 55-3 at 2, 55-2 at 2, 55-7 at 2.  Defendant terminated plaintiff's employment.  Docs. 55-3 at 2, 55-2 at 2, 55-7 at 2.

**D.  Relevant Testimony**

On January 6, 2021, Quincy Usry testified on defendant's behalf about certain topics specified in plaintiff's Fed. R. Civ. P. 30(b)(6) deposition notice.  Docs. 48-2 at 2–3, 48-3 at 2.  Mr. Usry's testimony on defendant's behalf included testimony about Topic 5 in the deposition notice.  Doc. 48-3 at 3.  Topic 5 asked defendant to designate a witness to testify about:

> Plaintiff's report(s) of a workplace injury, all actions taken by Walmart in response, the Walmart employees involved, and related documents including without limitation emails, text messages (WM_Braxton_000103-104), and the "Statement Form" produced as WM_Braxton_000105.

*Id.*

**II.  Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute [about] any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).  A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  And an "issue of fact is 'material'

'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [for] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

## III.  Analysis

Plaintiff has asserted a Kansas retaliatory discharge claim against defendant arising from plaintiff's employment with defendant.  Doc. 20 at 1.  Specifically, plaintiff alleges that defendant unlawfully terminated plaintiff's employment because plaintiff invoked her rights under the workers' compensation laws of Kansas.  *Id.*  Plaintiff filed a Motion for Partial

Summary Judgment, asking the court to find defendant liable as a matter of law for retaliatory discharge under Kansas law.  Doc. 47.

Before turning to the parties' arguments for and against granting partial summary judgment, the court first addresses defendant's Motion for Leave to File a Sur-reply to plaintiff's Reply.  Doc. 64.  The court then considers whether to grant the Motion for Partial Summary Judgment.

## A.  Defendant's Sur-reply

Defendant seeks leave to file a sur-reply to plaintiff's Reply, as additional support for her Motion for Partial Summary Judgment.  Under D. Kan. Rule 7.1(c), briefing on motions is limited to the motion (with memorandum in support), a response, and a reply.  Sur-replies typically aren't allowed.  *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd on other grounds*, 189 F. App'x 752 (10th Cir. 2006).

Instead, sur-replies are permitted only with leave of court and under "rare circumstances" after good cause is shown.  *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted); *see also Ambac Assurance Corp. v. Fort Leavenworth Frontier Heritage Cmtys., II, LLC*, No. 15-CV-9596-DDC-JPO, 2017 WL 1035953, at *1 (D. Kan. Mar. 17, 2017).  For example, when a moving party uses its reply to present new material—*i.e.*, new evidence or new legal arguments—and if the court plans to rely on that new material to decide the motion, the court should give the nonmoving party an opportunity to respond.  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003); *see also EEOC v. Int'l Paper Co.*, No. 91-2017-L, 1992 WL 370850, at *10 (D. Kan. Oct. 28, 1992).

The rules governing sur-replies "are not only fair and reasonable, but they assist the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word." *Humphries*, 1998 WL 982903, at *1 (citation and internal quotation marks omitted); *see also Int'l Paper Co.*, 1992 WL 370850, at *10 (explaining that briefing between parties "must have an end point and cannot be permitted to become self perpetuating").

Defendant contends a sur-reply is warranted here because plaintiff raised new arguments in her Reply. Doc. 64 at 1. Specifically, defendant argues that plaintiff's Reply asserts for the first time that: (1) her workers' compensation retaliation claim is not subject to the *McDonnell Douglas* burden-shifting framework because she has alleged direct evidence of retaliation; and, (2) defendant's injury reporting policy is per se unlawful. The court will address the two topics in dispute below.

**(1)** In its Response, defendant assumes that the *McDonnell Douglas* burden-shifting framework applies in this case and discusses why it would prevail under a *McDonnell Douglas* analysis. Doc. 55 at 7. Defendant did not include an argument in its Response under the direct evidence standard, or explain why a direct evidence standard does not apply. *Id.* Plaintiff argues in her Reply that the *McDonnell Douglas* framework does not apply because she has presented direct evidence of retaliation. Doc. 59 at 2. In sum, plaintiff has presented a counterargument responding to defendant's assertion that it should prevail under a *McDonnell Douglas* analysis. This situation appears often in spirited litigation and is something opposing counsel could anticipate. The court is unwilling to allow a sur-reply simply to respond to a counterargument that defendant could have anticipated. The court thus denies defendant's request for leave to file

6

the proposed sur-reply to respond to plaintiff's argument that the *McDonnell Douglas* burden-shifting framework does not apply.

**(2)** Second, defendant argues that plaintiff's Reply makes a new legal argument that defendant's injury reporting policy is per se unlawful.  Doc. 64 at 1.  Plaintiff argues in her Reply that defendant cannot satisfy its burden under the *McDonnell Douglas* framework to articulate a legitimate, non-discriminatory reason for firing plaintiff because defendant's injury reporting policy conflicts with Kansas law.  Doc. 59 at 2.

Defendant's Memorandum in Opposition argues that plaintiff fails her burden under the *McDonnell Douglas* analysis because she hasn't cited summary judgment facts showing that defendant's legitimate, non-retaliatory reason for plaintiff's termination was pretext for retaliation.  Doc. 55 at 8, 11–13.  Plaintiff's Reply responds to that argument by asserting that defendant has failed to fulfill its burden under the *McDonnell Douglas* analysis because defendant hasn't articulated a legitimate, nondiscriminatory reason for plaintiff's termination, thereby making the prima facie case the only element that plaintiff must prove.  Doc. 59 at 9.  This is argument is not new.  Instead, it responds to an argument defendant made in its Memorandum in Opposition.  Defendant contends that it has not had an opportunity to oppose plaintiff's argument on this point (Doc. 64 at 1), but allowing defendant to file a sur-reply in response to an argument that is not "new" contradicts our standing rules governing briefing on motions.  *See* D. Kan. Rule 7.1(c) (limiting briefing on motions to the motion (with memorandum in support), a response, and a reply); *see also Humphries*, 1998 WL 982903, at *1 (the rules "assist the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word." (citation and internal quotation marks omitted)).

For these reasons, the court denies defendant's Motion for Leave to File a Sur-reply to respond to plaintiff's argument that defendant's policy is unlawful.

**B.  Motion for Partial Summary Judgment**

Now, the court turns to plaintiff's Motion for Partial Summary Judgment.  Plaintiff asks for summary judgment in her favor on the liability issue because, she contends, she has adduced direct evidence of retaliation and it entitles her to judgment as a matter of law on her retaliatory discharge claim.  Doc. 48 at 1.  Plaintiff asserts that the *McDonnell Douglas* framework doesn't apply because she has come forward with direct evidence of retaliation.  And, plaintiff adds, even if the *McDonnell Douglas* framework did apply, defendant fails under the framework because it cannot articulate a legitimate, nonretaliatory reason for terminating her employment. Doc. 59 at 1–2.  So, she contends, these summary judgment facts establish as a matter of law that defendant is liable for retaliatory discharge under Kansas law.  The court addresses these arguments below.

**1.  Direct Evidence**

This court first must consider whether the *McDonnell Douglas* burden-shifting framework applies.  Our Circuit has recognized:  "Because [Kansas workers compensation retaliation claims] are rarely proven by direct evidence, the Kansas courts have adopted the *McDonnell Douglas* burden-shifting framework for analyzing retaliatory discharge cases." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (further citations omitted)).  Here, plaintiff asserts that she can prove her retaliatory discharge claim with direct evidence.  And so, she claims, the court need not apply the *McDonnell Douglas* burden-shifting test.

As our Circuit has noted in the Title VII context, a "plaintiff bringing a retaliation claim must establish that retaliation played a part in the employment decision and may choose to satisfy this burden in two ways." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233 (10th Cir. 2015) (internal citations, quotation marks, and alteration omitted). Plaintiff "may either (1) offer direct evidence that retaliation 'played a motivating part' in an employment decision adverse to her interests, or (2) rely upon circumstantial evidence under 'the familiar three-part *McDonnell Douglas* framework to prove that the employer's proffered reason for its decision is a pretext for retaliation.'" *Id.* (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008) (further citations omitted)).

"Direct evidence is evidence that, on its face, demonstrates that the employment decision was reached for discriminatory reasons." *Didier v. Abbott Labs.*, 614 F. App'x 366, 372 (10th Cir. 2015) (citing *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002)). "The classic example of direct evidence of discrimination comes from *Trans World Airlines*, where the Supreme Court held that an explicit, mandatory age requirement was direct evidence of age discrimination." *Tabor v. Hilti*, 703 F.3d 1206, 1216 (10th Cir. 2013) (citing *Trans World Airlines Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

Plaintiff argues she has adduced direct evidence of retaliation. Her argument relies on the following testimony from Mr. Usry's deposition. Specifically, he testified:

> Q.     So but for Ms. Braxton's report of a workplace injury to Walmart, Walmart would not have terminated her as it did, correct?
>
> A.     Correct.

Doc. 48-2 at 13–14 (Usry Dep. 55:24–56:2). Plaintiff argues that this statement is direct evidence of retaliation because it shows a nexus between plaintiff's protected status as an injured worker and her termination. Doc. 59 at 2.

9

Defendant responds, arguing that plaintiff takes this testimony out of context, and that Mr. Usry made it clear many times throughout his testimony that defendant terminated plaintiff's employment because she did not submit a *timely* report of her injury. Doc. 55 at 1. Defendant directs the court to the four preceding lines from Mr. Usry's deposition. There, defendant argues, he confirmed that but for plaintiff's failure to report her workplace injury in a timely fashion, defendant would not have terminated plaintiff's employment. Doc. 55 at 4. The relevant deposition testimony reads as follows:

> Q:     Meaning but for her report of an injury, she would not have been fired when and how she was fired, correct?
>
> A:     But for her timely report, yes.
>
> Q:     "But for" means had she have not. I'm sure you know that. If you don't understand one of my questions, let me know before you answer, okay?
>
> A:     Yes.
>
> Q:     Earlier I asked you if Mrs. Braxton hadn't reported her workplace injury, she wouldn't have been fired by Walmart as she was, meaning the same day and same time. And you agreed with that statement. Do you remember that testimony?
>
> A:     Yes.
>
> Q:     So but for Mrs. Braxton's report of a workplace injury to Walmart, Walmart would not have terminated her as it did, correct?
>
> A:     Correct.

Doc. 55-1 at 8–9 (Usry Dep. 55:8–56:2). And, as defendant correctly asserts, Mr. Usry testified many more times about the reason for plaintiff's discharge. That testimony includes the following:

> Q:     So what is—why was Mrs. Braxton terminated according to Walmart?

A:     For failure to report an incident by end of shift according to the 670e.

Q:     So Walmart's official position or contention in this lawsuit is that Mrs. Braxton was fired because she didn't report a workplace injury in the very shift that she first became aware of the injury; is that right?

A:     By end of shift, correct.

. . .

Q:     Can we agree that there is a connection between Mrs. Braxton's report of a work injury and her termination?

A:     When she reported the workplace injury.

. . .

Q:     Can we agree that had Mrs. Braxton never reported her workplace injury, Walmart wouldn't have fired her as it did?

A:     Correct.

Q:     Can we agree that there is some connection between Mrs. Braxton's report of a workplace injury and then her termination the same day?

A:     The timeliness of report, yes.

*Id.* at 3–4 (Usry Dep. 35:12–36:23).

Q:     And there is a connection between her report of a workplace injury and her termination that same day?

A:     Simplistically, yes.

Q:     Meaning but for her report of an injury, she would not have been fired when and how she was fired, correct?

A:     But for her timely report, yes.

*Id.* at 8 (Usry Dep. 55:3–55:13).

> Q:      Walmart's official position in this lawsuit is that it terminated Mrs.
>         Braxton because, according to Walmart, she did not report her
>         workplace injury in the shift that she first became aware of it?
>
> A:      According to what she provided, yes.

*Id.* at 6 (Usry Dep. 40:5–9).

> Q:      And Walmart's contention is that had Mrs. Braxton actually
>         reported her injury on April 13th of 2020, it would not have fired
>         her; is that correct?
>
> A:      If she would have reported it by end of shift, correct.

*Id.* at 7 (Usry Dep. 45:4–8).

> Q:      Walmart's contention or position in this lawsuit is that it would not
>         have fired her had she reported her workplace injury in the shift
>         she first noticed it, correct?
>
> A:      Correct.

*Id.* (Usry Dep. 45:19–23).

> Q:      So Walmart's contention is that it terminated Mrs. Braxton because
>         of the timeliness or untimeliness of her injury report, correct?
>
> A:      Correct.
>
> Q:      Walmart in this lawsuit is contending that Mrs. Braxton knew
>         about her injury on April 13th of 2020, right?
>
> A:      Correct.
>
> Q:      And Walmart's position in this lawsuit is that it fired Mrs. Braxton
>         because she reported her workplace injury on April 14th of 2020,
>         correct?
>
> A:      Correct.

*Id.* at 10–11 (Usry Dep. 141:15–142:1).

"'Direct evidence is evidence, which if believed, proves the existence of a fact in issue

without inference or presumption.'" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th

12

Cir. 2007) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007)).  Plaintiff urges the court to focus on three lines of testimony, ignoring the overall context of that testimony.  This argument suggests that no other testimony from the deposition contradicts or even amplifies the referenced testimony and that no other testimony is necessary to understand the given testimony adequately.  But, the court must consider the entirety of the summary judgment record, viewing the evidence and drawing inferences from it in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245-46 (10th Cir. 2010)).

After reviewing the testimony as a whole, defendant's designated representative repeatedly testified that defendant terminated plaintiff because she failed to report her workplace injury in a timely fashion, thereby violating Policy 670e.  Mr. Usry failed to note this distinction just once, and that is the testimony that plaintiff chooses to cite to support her motion.  "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007) (citation and internal quotation marks omitted).  One reasonably can interpret Mr. Usry's statements benignly to mean that defendant terminated plaintiff because of the timing of her injury report—and not because she reported a work injury.

After reviewing the facts in the light most favorable to defendant as the non-movant, the court concludes that plaintiff has not shown as a matter of law that she has established retaliatory treatment by direct evidence.  As a consequence, the court cannot conclude that plaintiff has adduced uncontroverted direct evidence of retaliatory treatment.  It thus cannot grant plaintiff summary judgment by using the direct evidence standard.

### 2. *McDonnell Douglas* **Framework**

Having concluded that direct evidence does not entitle plaintiff to summary judgment on the liability issue, the court now turns to the alternative basis advanced by plaintiff's motion— the *McDonnell Douglas* framework.  As discussed, "Kansas applies the familiar *McDonnell Douglas* burden-shifting framework for analyzing retaliatory discharge claims."  *Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1268 (10th Cir. 2008) (citations omitted).  In retaliation cases, this framework begins with the prima facie case.  A "plaintiff makes a prima facie claim by showing (1) that he filed a claim for workers compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of the compensation claim or the fact that he sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury and the termination."  *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1294 (10th Cir. 2002) (citations omitted).

If plaintiff makes the showing for a prima facie case, the "burden then shifts to the employer to show [a] non-retaliatory reason for the discharge."  *Id.* (citation and internal quotation marks omitted).  "If the employer meets this burden, the burden shifts back to the plaintiff but the plaintiff must show clear and convincing evidence that he or she was terminated in retaliation for exercising rights under the Workers' Compensation Act."  *Id.* (citation and internal quotation marks omitted); *see also Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, (10th Cir. 2002) ("Although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the

plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." (citations and internal quotation marks omitted)).

### a.    Prima Facie Case

Here, plaintiff asserts that she has established, as a matter of law, all four elements for a prima facie case of retaliation.  First, plaintiff sustained a work place injury, a fact undisputed by both parties.  Second, defendant knew that plaintiff sustained a work place injury.  Third, defendant terminated plaintiff after she reported a workplace injury.  Job termination constitutes an adverse employment action.  *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998) (holding that a "materially adverse employment action" requires evidence that employee's employment status was affected).  Plaintiff thus has satisfied the first, second, and third parts of her prima facie case.

The final element of the prima facie case requires a causal connection between plaintiff's protected action (reporting a workplace injury to defendant) and her termination.  To prove this element, plaintiff relies primarily on the following deposition testimony from defendant's 30(b)(6) witness, Quincy Usry:

> Q.    There is a causal connection between Mrs. Braxton's report of a workplace injury and her termination?
>
> A.    Generally speaking, yes.

Doc. 48-2 at 12 (Usry Dep. 38:15–19).

Defendant argues that no causal connection exists between the fact that plaintiff reported a workplace injury and her termination.  Rather, defendant argues that a connection exists between the *timing* of plaintiff's report of a workplace injury, her corresponding violation of Walmart's work rule, and her termination.  But, defendant argues, these facts are not sufficient to prove causation as a matter of law sufficient to warrant summary judgment.

"A retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir. 1996)); *see also Meiners v. Univ. of Kan.*, 239 F. Supp. 2d 1175, 1195 (D. Kan. 2002), *aff'd*, 359 F.3d 1222 (10th Cir. 2004) (holding that timing of protected activity and adverse employment action "can provide sufficient support for plaintiff's prima facie case"). Defendant terminated plaintiff's employment within 24 hours after she submitted a workplace injury report. A one-day period between protected activity and adverse action easily can establish causation. *See Meiners*, 359 F.3d at 1231 (holding that a six-week period between protected activity and adverse action, standing alone, may suffice to show causation).

Based on these undisputed summary judgment facts, the court assumes, without deciding, that plaintiff could shoulder her burden to establish her prima facie case.

### b. Legitimate, Nonretaliatory Reason

Next, the *McDonnell Douglas* test shifts the burden to defendant to articulate a legitimate, nonretaliatory reason for terminating plaintiff. Defendant argues that it has come forward with a legitimate, nonretaliatory basis for its actions—namely, defendant's own policies governing the duty to report workplace injuries. "When an employee violates an employer's policies . . . it will often be the case that the employer can assert a legitimate, non-retaliatory reason for taking an adverse employment action against the employee." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1152 n.3 (10th Cir. 2008).

Defendant asserts that the summary judgment facts provide a basis for a reasonable jury to find that plaintiff violated defendant's Policy 670e. It required defendant to impose a First Written formal disciplinary action when plaintiff failed to report her injury by the end of the shift

in which it occurred.  Doc. 55 at 8.  Defendant argues that because plaintiff was a seasonal associate, her First Written formal disciplinary action required plaintiff's termination under defendant's written Conduct Disciplinary Guidelines.  *Id.*

Plaintiff argues that defendant's policy is unlawful and conflicts with the public policy of Kansas.  She asserts that the public policy of Kansas has made it illegal to fire an employee for sustaining a workplace injury.  Plaintiff points to Kansas law, saying it gives employees 20 days to report injuries to their employers, and the reporting requirement is waived if the employer has actual notice.  Plaintiff references Kan. Stat. Ann. § 44-520, which states in pertinent part:

> Proceedings for compensation under the workers compensation act shall not be maintainable unless notice of injury by accident or repetitive trauma is given to the employer by the earliest of the following dates:  (A) 20 calendar days from the date of accident or the date of injury by repetitive trauma[.]

Kan. Stat. Ann. § 44-520(a)(1)(A).

Plaintiff's argument misconstrues this statute.  Section 44-520 requires employees, if they wish to preserve their right to recover under Kansas's workers compensation laws, to report their injuries within 20 days after they occur.  It does not forbid employers from adopting, however, workplace policies requiring their employees to report workplace injuries on a prompter basis.  Defendant's policy here required employees to report their injuries within the shift they occur.  It does not conflict with the Kansas statute.  The court thus finds that defendant has come forward with a legitimate, nonretaliatory reason for terminating plaintiff's employment.  This conclusion doesn't end the summary judgment analysis, and so, the next section addresses the final piece of the *McDonnell Douglas* framework.

### c.  Pretextual Motives

Because defendant has established a legitimate, nonretaliatory reason for plaintiff's termination, the *McDonnell Douglas* test shifts the burden back to plaintiff to show that a

rational jury could find that the stated reason is pretextual. "Pretext can be inferred from evidence revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanation for the termination." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

The court concludes that plaintiff has not carried her burden on this last part of the analysis. Indeed, plaintiff hasn't even tried to do so. She never identifies any basis to find that defendant's articulated reason is a pretext, designed to obscure defendant's discriminatory motive. In sum, plaintiff's summary judgment showing falls far short of the showing she has to make to deserve summary judgment in her favor on this part of the framework; *i.e.*, she hasn't demonstrated that a reasonable jury only could conclude that defendant's articulated, non-retaliatory reason is pretextual.

### d. Summary

While plaintiff's retaliation claim may survive for trial, she has not demonstrated that she deserves summary judgment under the *McDonnell Douglas* framework.

## IV.  Conclusion

For all these reasons, the court concludes that the summary judgment facts, when viewed in defendant's favor as the nonmovant, do not entitle plaintiff to summary judgment on the liability aspect of her Kansas common law retaliation claim. The court thus denies plaintiff's Partial Summary Judgment Motion (Doc. 47). Defendant's Motion for Leave to File a Sur-reply (Doc. 64) also is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Partial Summary Judgment (Doc. 47) is denied.

**IT IS FURTHER ORDERED THAT** defendant's Motion for Leave to File a Sur-reply (Doc. 64) is denied.

**IT IS SO ORDERED.**

**Dated this 18th day of May, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
